PROB 12C
(6/16)

Report Date: October 9, 2025

# United States District Court

### for the

### Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 14, 2025

SEAN F. McAVOY, CLERK

ECF No. 423

## Petition for Warrant or Summons for Offender Under Supervision

| | |
|---|---|
| Name of Offender: Jordin Lemus | Case Number: 0980 4:21CR06008-EFS-2 |
| Address of Offender: ▇▇▇▇▇▇▇▇▇▇▇ Toppenish, Washington 98948 | |
| Name of Sentencing Judicial Officer: The Honorable Edward F. Shea, Senior U.S. District Judge | |
| Date of Original Sentence: December 13, 2022 | |
| Original Offense: Conspiracy to Distribute 400 Grams or More of Fentanyl and 50 Grams or More of Actual (Pure) Methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) | |
| Original Sentence: Prison - 63 months; TSR - 60 months | Type of Supervision: Supervised Release |
| Asst. U.S. Attorney: Ian Lloyd Garriques | Date Supervision Commenced: December 27, 2024 |
| Defense Attorney: Andrea K George | Date Supervision Expires: December 26, 2029 |

### PETITIONING THE COURT

To issue a warrant.

On January 3, 2025, Mr. Lemus met with a U.S. Probation officer and reviewed the conditions of supervised release outlined in his judgment. Mr. Lemus signed and acknowledged an understanding of the conditions imposed.

The probation officer believes that the offender has violated the following conditions of supervision:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1 | **Mandatory Condition #1**: You must not commit another federal, state or local crime.<br><br>**Supporting Evidence**: Mr. Lemus is considered to be in violation of his supervised release conditions by assaulting J.B., on or about October 4, 2025.<br><br>Per Toppenish Police Department incident report 25P5550, on October 4, 2025, at about 1 a.m. Officer Sanchez was dispatched to 207 South Date Street reference a domestic in progress with a third-party report. Dispatch advised on "CAD" screen, "can hear subjects fighting inside the APT, can hear crying, subjects just recently moved in." CAD screen showed, "can hear banging, male heard saying STFU (Shut the fuck up)."<br><br>On arrival, the officer checked the area and did not hear anything from apartment unit numbers 1 or 2. He continued checking and observed an apartment unit on the fourth side of the residence (northeast side). The officer approached the residence when he heard a thump sound, as if something or someone fell coming from apartment 3. The officer |

Prob12C
Re: Lemus, Jordin
October 9, 2025
Page 2

approached the front door when the front door opened with a female attempting to run out and froze when she saw the officer. The officer observed a male subject behind her covered in blood marks on his shirt. The female had substantial marks on her face with blood, lacerations, and swelling on her lips.

The male subject was identified as Jordin Manuel Sanchez Lemus, date of birth September 4, 1996. Mr. Lemus and the female, later identified as J.B., were both located inside the residence and attempted to close the door, with J.B. showing signs of facial expressions of fear with substantial injuries.

The officer entered the residence without a warrant due to the totality of circumstances as J.B. and Mr. Lemus were both still inside the residence with a high chance of great bodily harm, and the officer observed Mr. Lemus drop an item in his hand that appeared to be a weapon. The officer entered due to exigent circumstances to get in front of J.B. in case deadly force was necessary.

Mr. Lemus was visibly upset and turned towards J.B. while stating, "Are you serious, we're just drinking," while looking at J.B. J.B. stated she did not do anything when Lemus told her, "Your lying." Mr. Lemus was detained. The officer told J.B. to step outside and walked Mr. Lemus outside of the residence until additional units arrived on scene.

The officer asked Mr. Lemus for his name, and he stated he wanted his attorney. With this statement, the officer did not ask Mr. Lemus any guilt seeking questions. Mr. Lemus stated, "You can't arrest me by yourself, I'm violent who the fuck are you. I'm a federal inmate I don't give a fuck." Mr. Lemus used his right shoulder to strike the officer while in handcuffs. The officer grabbed Mr. Lemus by his arms as he tensed up. The officer told Mr. Lemus, "Don't do that we're not going to do this," to de-escalate the situation, not striking him at any point due to being in hand cuffs.

The officer used his right arm to move Mr. Lemus' face away from him and told Mr. Lemus to face away from the officer as additional units arrived on scene. The officer walked Mr. Lemus to his patrol vehicle parked in front of the residence. Mr. Lemus was aggravated and yelling as he was walked to the patrol vehicle. Mr. Lemus was advised he was being detained for domestic violence. The officer checked Mr. Lemus for weapons, and he was placed into the patrol vehicle. Mr. Lemus refused to comply with commands when asked to move his foot.

Mr. Lemus intentionally placed his foot between the vehicle frame to prevent the door from closing, delaying the investigation. Mr. Lemus was told to move his foot several times. The officer was assisted by additional officers to close his patrol vehicle's rear door. Mr. Lemus used his right foot to prevent the patrol vehicle door from closing and was pushed back by a second officer using the driver side rear door. Mr. Lemus was secured after a few minutes and watched by a Yakima County deputy. The officer went back to the residence to contact the victim, J.B.

J.B. had the left side of her cheek bone swollen with an impact mark near her ear on the same side. J.B. had blue colors on her nose that appeared to be swollen and crooked. J.B. had her upper lip busted with swelling and blood coming from it and marks on her neck. The marks on J.B.'s neck were purple with scratches. The officer took photos of J.B.'s injuries.

Prob12C
**Re: Lemus, Jordin**
**October 9, 2025**
**Page 3**

J.B. refused to be a victim stated it was the first time she and Mr. Lemus got into a fight in a long time, as they were in a dating relationship and just moved to apartment unit 3. J.B. stated she did not want to give any information and appeared to be in fear. J.B. stated she was in fear because she was on federal probation and did not want Mr. Lemus to get in trouble. J.B. stated Mr. Lemus was upset because she did not allow him to take her vehicle keys. J.B. stated it was Mr. Lemus who was angry and could not give specifics about the incident and stated Mr. Lemus drank "a little bit" of alcohol.

The officer looked into apartment 3, where he saw blood drops on the flooring inside the residence near the front door where he observed J.B. when she opened the door. The officer provided J.B. with resources, and she was transported to the hospital by Aid to be treated for her injuries.

Given the totality of circumstances and evidence at the scene, the officer requested Mr. Lemus be charged with second degree assault. Mr. Lemus and J.B. were the only ones inside the residence. Mr. Lemus had minor scratches on his neck with his shirt covered in blood. Mr. Lemus knowingly inflicted bodily harm, which by design causes such pain or agony as to be the equivalent of that produced by torture. While in custody during excited utterance, Mr. Lemus stated, "Who called the cops, was it my girl while she was in headlock?"

Mr. Lemus was medically cleared at the Toppenish Hospital, refusing any medical attention or medical staff to check him. The officer transported Mr. Lemus to the Yakima County Jail, where he was booked for second degree assault domestic violence and obstruction. The officer requested Mr. Lemus be charged with assault domestic violence and obstruction for hindering and delaying his investigation when Mr. Lemus refused to comply inside the patrol vehicle, using his feet to keep the door open. On arrival at Yakima County Jail, Mr. Lemus became aggressive and Yakima County Correctional Officers assisted taking him to the back to be changed out.

A Yakima County Correctional Officer advised Mr. Lemus to have a plastic bag located inside his sock inside his shoe with a white crystal substance. The white crystal substance appeared to be known as narcotics, appearing to be methamphetamine or cocaine. The white powdery substance was placed inside a black glove and entered into evidence for destruction. The officer cleared from the jail to follow-up with J.B.

On arrival, the officer contacted J.B. in room #3 at the Toppenish Hospital. J.B. refused to go over a voluntary domestic violence form. The officer asked J. B. what happened, and she stated Mr. Lemus wanted to get her keys. J.B. stated Mr. Lemus was intoxicated and was drinking prior to her arrival at about 8 p.m.

J.B. stated Mr. Lemus was drinking with friends at their residence, who were gone when she arrived. J.B. stated they were the only ones home during the incident. J.B. said the incident occurred for about l0 minutes and she did not have the injuries on her face when she got home from work. J.B. stated when the officer got there and she opened the front door, she was in escape mode trying to get away from Mr. Lemus.

J.B. stated she was in fear of Mr. Lemus, but not in fear of her life. J.B. stated she did not think Mr. Lemus would kill her, but he did strike her inside the residence in the living room. J.B. stated Mr. Lemus was just throwing strikes and she placed her head down while trying

Prob12C
**Re: Lemus, Jordin**
**October 9, 2025**
**Page 4**

to block the strikes thrown by Mr. Lemus.

J.B. was not sure how Mr. Lemus struck her, but stated most of the strikes were with a closed fist and no weapons were used. J.B. stated she did not know what she was going to do about rent and was advised to contact the resources provided for additional help. J.B. said she was not choked at any point during the assault by Mr. Lemus.

The officer cleared the hospital and got a telephonic No Contact Order (NCO) approved with a Probable Cause Form by Judge Troy Lee via email. The Telephonic NCO was e-mailed to the jail to be served and entered, showing Mr. Lemus as the Respondent and J.B. as the Petitioner. The officer requested Mr. Lemus be charged with the listed charges, and that concluded the involvement in this incident.

2   **Mandatory Condition #1**: You must not commit another federal, state or local crime.

**Supporting Evidence**: Mr. Lemus is considered to be in violation of his supervised release conditions by being arrested for obstruction by the Toppenish Police Department on or about October 4, 2025.

Please refer to Violation number 1 above.

3   **Special Condition #5**: You must not enter into or remain in any establishment where alcohol is the primary item of sale. You must abstain from alcohol and must submit to urinalysis and Breathalyzer testing as directed by the supervising officer, but no more than 6 tests per month, in order to confirm continued abstinence from this substance.

**Supporting Evidence**: Mr. Lemus is considered to be in violation of his supervised release conditions by consuming alcohol on or about October 4, 2025.

Please refer to Violation number 1 above.

The U.S. Probation Office respectfully recommends the Court issue a warrant requiring the defendant to appear to answer to the allegations contained in this petition.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   October 9, 2025

s/Arturo Santana

Arturo Santana
U.S. Probation Officer

Prob12C
Re: Lemus, Jordin
October 9, 2025
Page 5

## THE COURT ORDERS

- [ ] No Action
- [X] The Issuance of a Warrant
- [ ] The Issuance of a Summons
- [ ] The incorporation of the violation(s) contained in this petition with the other violations pending before the Court.
- [ ] Defendant to appear before the Judge assigned to the case.
- [X] Defendant to appear before the Magistrate Judge.
- [ ] Other

*Edward F. Shea*

Signature of Judicial Officer

October 14, 2025

Date